### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **MICHAEL FLETCHER**, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No: |
| | Hon. |
| v. | Mag. |
| **PCB BATTLE CREEK LLC**, a limited liability company, | |
| Defendant. | |

### COMPLAINT AND JURY DEMAND

Plaintiff, Michael Fletcher ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned attorneys, hereby brings this action seeking Court Supervised Notice pursuant to 29 U.S.C. § 216(b) and a Class Action pursuant to Fed. R. Civ. P. 23 against PCB Battle Creek LLC ("Defendant") arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law. Plaintiff's allegations herein are based upon knowledge as to matters relating to himself and upon information and belief as to all other matters.

### JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

2. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

1

3. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

4. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of his federal claims.

5. This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Michigan, employs individuals within the state of Michigan, and is registered with the Michigan Department of Licensing and Regulatory Affairs.

6. Venue lies in in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District.

## PARTIES

7. Plaintiff Michael Fletcher is a resident of Battle Creek, Michigan and worked for Defendant as a non-exempt hourly employee from approximately March 28, 2022 through March 19, 2024. Plaintiff's consent to join this collective action is attached hereto as **Exhibit A**.

8. Additional Opt-in Plaintiffs were or are employed by Defendant as hourly employees during the past three (3) years and their consent to join forms will also be filed in this case.

9. Defendant PCB Battle Creek LLC is a Delaware limited liability company (File No. 6199227), registered to do business in the state of Michigan (ID No. 802035352). Defendant maintains a registered agent for service of process listed as CSC-Lawyers Incorporating Service (Company), 3410 Belle Chase Way, Suite 600, Lansing, Michigan 48911.

10. Defendant is in the packaged foods manufacturing business, holding itself out to be "home to more than 25 iconic cereals, a peanut butter brand known as Spreading Magic®, and nutritious and delicious pet food options to help the furry loved ones in our lives thrive, too."[1]

### **GENERAL ALLEGATIONS**

11. Prior to hiring prospective non-exempt hourly employees ("Hourly Employees"), Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

12. Defendant maintained documents demonstrating the promised hourly wage for each Hourly Employee, including, but not limited to: offer letters, paystubs, and/or payroll records.

13. Plaintiff received an offer from Defendant to work as an Hourly Employee, and he accepted Defendant's offer with the understanding that his base hourly rate would be paid for all hours worked.

14. Defendant employed other similarly situated non-exempt Hourly Employees in Michigan.

15. During Plaintiff's employment with Defendant, Plaintiff worked as a Grape-Nuts Baker, a Material Handler, and Production Support.

16. Plaintiff performed under his agreement with Defendant by carrying out his job duties and responsibilities, which included, but was not limited to, baking loaves of bread for Grape-Nuts cereal; operating forklifts to load and unload trailers; maintaining forklifts and other equipment to reduce/eliminate downtime; and maintaining clean, sanitary, and orderly work areas to ensure employee and food safety.

17. Defendant paid its Hourly Employees at varying hourly rates.

---

[1] *See* https://www.postconsumerbrands.com/ (last visited Dec. 4, 2024).

18. Defendant's Hourly Employees worked up to and more than forty (40) hours per week.

19. There were one or more instances during Plaintiff's employment when he worked forty (40) hours or more in a workweek.

20. Defendant provided training to Hourly Employees, on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; attendance; and Defendant's policies. The training that all of Defendant's Hourly Employees received was substantially, if not entirely, the same, and Defendant's Hourly Employees, including Plaintiff, were subject to the same relevant policies and procedures.

21. At all relevant times, Defendant controlled Plaintiff's and all other Hourly Employees' work schedules, duties, protocols, assignments, and employment conditions.

22. Throughout Plaintiff's employment, Defendant compensated him at several different base hourly rates of pay, ranging from $18.25, to $19.64, to $21.24.

23. Plaintiff was additionally paid at different rates depending on the job he performed. For example, in one particular workweek, Plaintiff was paid at the base hourly rates of $19.64 and $21.24 for two different jobs that fell within the same type of manufacturing work.

24. As non-exempt employees, Plaintiff and Defendant's Hourly Employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

25. At all relevant times, Defendant used a time-clock timekeeping system for recording its Hourly Employees' daily time punches.

26. Regardless of the specific job title, all of Defendant's Hourly Employees were classified as non-exempt; used the same timekeeping system(s); and were subject to the same relevant timekeeping, pay, and attendance policies.

27. Throughout his employment with Defendant, Plaintiff and other Hourly Employees were permitted to clock into Defendant's timekeeping system ten (10) to fifteen (15) minutes before the start of their scheduled shift and were required to clock out the moment their scheduled shifts ended.

28. After clocking in, Plaintiff and the Hourly Employees attended daily pre-shift meetings during which their supervisor would assign jobs for the shift. Employees who attended the meetings received more favorable job assignments, whereas those who did not were assigned the remaining jobs.

29. The meetings took approximately two (2) minutes every shift, and as soon as Plaintiff and the Hourly Employees received their assigned job for the shift, they immediately started working.

30. Although Hourly Employees, like Plaintiff, clocked in before Defendant's daily meetings and before they commenced work, Defendant deprived Plaintiff and its Hourly Employees of compensation for all work performed.

31. More specifically, Defendant maintained a corporate time-shaving practice pursuant to which it shaved time from its Hourly Employees' timesheets and paid them based on their start-of-shift time rather than their clock-in time.

32. As a result, Plaintiff and similarly situated Hourly Employees were not paid for the time they spent participating in Defendant's daily pre-shift meetings and/or working before the start of their scheduled shifts.

33. Plaintiff complained about Defendant's unlawful time-shaving practice on a number of occasions throughout his employment. For example, he complained to his supervisors "little Andy" and "big Andy" about his paystubs not reflecting pre-shift time worked. His supervisors advised him that he was only paid for his scheduled shift.

34. Defendant's unlawful time-shaving practice shaved, on average, ten (10) to fifteen (15) minutes from the total amount of Plaintiff and other Hourly Employees' total on-the-clock time. As a result, Defendant failed to pay Plaintiff and all other similarly situated Hourly Employees for all hours worked, including overtime hours in workweeks in which they worked more than forty, as required by the FLSA.

35. Defendant's time-shaving practice was intended to and did systematically underpay all of Defendant's Hourly Employees.

36. Defendant's time-shaving scheme did not meet the FLSA requirements of a legal "rounding" practice as described in 29 C.F.R. § 785.48 because any rounding did not "average out so that the employees [we]re fully compensated for all the time they actually work[ed]," and instead "result[ed], over a period of time, in a failure to compensate the employees properly for all the time they [] actually worked." *Id*.

37. Upon information and belief, the FLSA violations discussed herein were committed against every hourly employee in every workweek and resulted in a substantial amount of uncompensated work over the past three (3) years.

38. Defendant knew or should have known that all of Plaintiff and all other Hourly Employees' work was compensable under the FLSA. Likewise, Defendant knew or should have known that its time-shaving policy and practice violated the FLSA.

**The Regular Rate of Pay**

39. Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co*., 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

40. No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." Id.

41. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. Defendant carries the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo*., 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc*., 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendant's hourly employees for work performed are included in the base calculation unless specifically excluded by statute.

42. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co*., 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine

compliance with the statute.

43. When an employee is paid at two or more rates of pay, the weighted average of the rates is used to calculate overtime. *Rapp v. Forest City Technologies, Inc.*, No. 1:20-cv-2059, 2021 WL 2982005, at *5 (N.D. Ohio July 15, 2021) (quoting 29 C.F.R. § 778.115). Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. 29 C.F.R. § 778.115

### Defendant Failed to Calculate the Regular Rate of Pay

44. Despite the well-established law on this issue, Defendant failed to pay Plaintiff one-and-one-half times his weighted-average pay for the hours he worked in excess of 40 in any workweek.

45. As a result, Plaintiff and those similarly situated regularly worked in excess of forty (40) hours a week and have been paid some overtime for those hours but at a rate that does not reflect the weighted average wage for all hours worked as required by the FLSA.

46. For example, in one workweek, Plaintiff worked 52 hours of work, with 16 hours at $19.64 and 36 hours at $21.24. His gross earnings were $1,230.54. However, the rates upon which overtime was paid did not reflect the weighted average of the two (2) rates at which Plaintiff worked.

47. Defendant knew or should have known that it was required to pay Plaintiff and other similarly situated Hourly Employees overtime at a rate that reflected the weighted average of the rates at which he or she worked.

48. As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and

costs, interest, and any other relief deemed appropriate by the Court.

## **SIMILARLY SITUATED ALLEGATIONS**

49. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> *All current and former Hourly Employees who worked for Defendant in Michigan at any time in the past three years.*

(hereinafter referred to as the "Putative Plaintiffs"). Plaintiff reserves the right to amend this definition if necessary.

50. Excluded from the definition of the Putative Plaintiffs are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

51. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

52. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the Putative Plaintiffs for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

53. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

54. An action for Court Supervised Notice collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this action are similarly situated because (a) they were or are subject to Defendant's universal time-shaving practice, policy, or plan; (b) they performed pre-shift off-the-clock work; and (c) their claims are based upon the same factual and legal theories.

55. Plaintiff estimates the Putative Plaintiffs, including both current and former Hourly

Employees over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

56. Plaintiff and the Putative Plaintiffs' claims are based on the same legal theories, namely, Defendant's statutory violations, and proof of Defendant's violations, as well as Defendant's unlawful conduct, will be common across all Putative Plaintiffs.

57. Plaintiff asserts that at least a strong likelihood exists that he is similarly situated to the Putative Plaintiffs.

58. The Putative Plaintiffs are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

59. The Putative Plaintiffs should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the Putative Plaintiffs, who were unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

60. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> *All current and former Hourly Employees who worked for Defendant in Michigan at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

61. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23

Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

  62. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

   a. Whether the pre-shift time Rule 23 Nationwide Class members spent attending meetings and working is compensable time under applicable law;

   b. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

   c. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

  63. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

  64. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

  65. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small

amount of damages at stake for each individual along with the fear of reprisal by their employer.

66. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

67. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

68. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

69. Plaintiff re-alleges and incorporates all previous paragraphs herein.

70. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

71. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

72. At all times relevant to this action, Plaintiff and the Putative Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

73. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and

the Putative Plaintiffs to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

74. Plaintiff and other Putative Plaintiffs, by virtue of their job duties and activities actually performed, were all non-exempt employees.

75. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

76. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

77. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

78. Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. 29 C.F.R. § 778.115.

79. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and the Putative Plaintiffs to work off-the-clock, every shift, and failed to pay these employees the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

80. The off-the-clock work performed every shift by Plaintiff and the Putative Plaintiffs was an essential part of their jobs and these activities and the time associated with these activities

was significant.

81. Defendant additionally maintained an unlawful time-shaving policy that did not comply with 29 C.F.R. § 785.48 because the policy did not "average out so that the employees [we]re fully compensated for all the time they actually work," and instead "result[ed], over a period of time, in a failure to compensate the employees properly for all the time they have actually worked." *Id.*

82. As a result of Defendant's unlawful time-shaving policy, in workweeks that the Plaintiff and the Putative Plaintiffs worked more than forty (40) hours, they were deprived of overtime wages in violation of the FLSA.

83. At all times relevant to this action, Defendant required Plaintiff and the Putative Plaintiffs to perform no less than ten (10) minutes and as much as fifteen (15) minutes of off-the-clock post-shift work per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

84. In workweeks where Plaintiff and the Putative Plaintiffs worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

85. Defendant additionally failed to pay Plaintiff and the Putative Plaintiffs one-and-one-half times their weighted-average pay for the hours they worked in excess of forty (40) in any workweek. This failure resulted in Plaintiff and the Putative Plaintiffs being paid some but not all overtime they were statutorily owed.

86. At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and the Putative Plaintiffs the legally required amount of overtime compensation for

all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

87. As a result of Defendant's willful failure to compensate Plaintiff and the Putative Plaintiffs at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

88. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the Putative Plaintiffs for all work activities, but did not.

89. Plaintiffs and all Putative Plaintiffs are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and the Putative Plaintiffs are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

90. Plaintiff and the Putative Plaintiffs are entitled to backpay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

91. Plaintiff re-alleges and incorporates all previous paragraphs herein.

92. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

93. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Hourly Employee work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

94. For example, Defendant offered to compensate Plaintiff at a minimum of $18.25 per hour if he agreed to perform services for Defendant as an Hourly Employee. Plaintiff accepted Defendant's offer and performed his duties as an Hourly Employee in reliance on the offer.

95. Defendant breached its contractual promises by failing to pay Hourly Employees at their fixed, pre-agreed upon hourly rate for all of the hours worked.

96. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

97. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift work described herein.

98. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-

clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

99. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

100. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

101. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

102. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT III
## RULE 23 NATIONWIDE CLASS ACTION
## UNJUST ENRICHMENT

103. Plaintiff re-alleges and incorporates all previous paragraphs herein.

104. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

105. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of

Defendant.

106. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

107. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

108. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

109. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

110. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

111. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

112. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

113. As a direct and proximate result of Defendant's actions, Plaintiff and every other

Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a. An Order authorizing Court Supervised Notice pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiff a list of all current and former hourly employees who work or have worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

b. In the event the Defendant seeks to have discovery on the issues of whether the Putative Plaintiffs are similarly situated to Plaintiff, an order tolling the FLSA statute of limitations for the Putative Plaintiffs as of the filing of this Complaint through the end of the *Clark* discovery period;

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

d. An Order designating the Plaintiff as representative of the Putative Plaintiffs and the Rule 23 Nationwide Class and undersigned counsel as Class counsel for the same;

e. An Order requiring a complete accounting of all the compensation Plaintiff and all Putative Plaintiffs are owed;

f. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

g. An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

h. An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

i. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the Putative Plaintiffs, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

j.  An award of pre-judgment and post-judgment interest;

k.  An award of costs and expenses of this action together with reasonable attorneys' fees, and an award of a service payment to the named Plaintiff; and

l.  Such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: December 17, 2024

Respectfully submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Alana A. Karbal (P82908)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Tel: (248) 355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

Jonathan Melmed (*Pro Hac Vice forthcoming*)
Laura Supanich (*Pro Hac Vice forthcoming*)
**MELMED LAW GROUP P.C.**
1801 Century Park East, Suite 850
Los Angeles, CA 90067
Tel: (310) 824-3828
jm@melmedlaw.com
lms@melmedlaw.com

*Attorneys for Plaintiff and the Putative Plaintiffs*